Thank you. Please call the next case. Docket 4-130199-WC, Jill Hacker, appellant v. Workers' Compensation Commission, Carl Foundation Hospital, Appalachia. Counsel, you may proceed. Thank you. I'd like five minutes for rebuttal, please. May it please the Court, Mr. Chivanek. My name is Michael Miles and I represent the appellant, Jill Hacker, and ask this Court to reverse and remand the decision of the Circuit Court. For anyone who has practiced, it doesn't take long for anyone who has practiced before the Illinois Workers' Compensation Commission to understand that arguing to a reviewing court that a commission's decision is contrary to the manifest weight of the credible evidence is a very difficult task. But not insurmountable. But not insurmountable. But as Judge Leonard said in his memorandum of opinion, which I thought was very eloquent, he said, the Court is constrained by a standard of review that is heavily fraught with deference. And that deference is, there is a continuum of deference, but it isn't insurmountable. But sometimes the perception is that it is insurmountable. So, anyway, we plug on. And I think Judge Leonard's statement is understood. It's not insurmountable, but it's fraught with deference. However, and many courts have stated, it can be done when the clearly evident, plain, and indisputable weight compels an apparent and opposite conclusion. I'll bet that somehow ties into your argument. Yes, it does. And it's general to the specific. Because arguing the manifest weight question is very difficult. And I believe here the facts show that the clearly plain and indisputable weight of the evidence compels a conclusion that Ms. Hacker suffered a work-related injury on June 4, 2009, when she stumbled on a gas pipe crossing over concrete steps leading up to the house of her home health care patient. At the time of the injury, Ms. Hacker, a registered nurse, was carrying her nurse's bag, which contained a laptop, computer, and nursing supplies. She continued to work, hoping that she only had a minor injury. But after 10 days, the pain was still there, so she went, reported the accident, treated at Carle Foundation's health care facility, provided an initial medical history stating June 4, she tripped on a pipe at the patient's home. Every medical record, every accident report, every evaluation report from that point forward, 10 days following the accident... You're right. All the medical reports contain a history given by her. And she says she tripped on this pipe. Yes. The Starks, I believe their name was? Yes. Both of them testified that couldn't have happened. The steps were covered by, I think this happened in June. Yes. And they testified the steps were covered with a deck at this time, and the deck wasn't removed until July. And this didn't happen. They saw her come up the walk. She didn't trip, and she didn't stumble. So you have her telling a story several times, including to her doctors, and you have the Starks telling another story. Then a picture is produced, and the arbitrator makes a comment and says, if you look at the picture, you couldn't possibly trip over this gas pipe. It's up against the edge of the stair. So now tell me why a decision that finds no accident is against the manifest way to the evidence. They just believe the Starks in the picture over your client. And remember, your person is not insurmountable in light of that. Yes, I appreciate that. In a nutshell. Ms. Stark also testified that there's no way that Ms. Hacker would have known that the gas pipe was present. She wouldn't have known that it existed. She wouldn't, because it was under a deck, according to them. Yes. So how do we reconcile that conflict in testimony? We go to the medical records and the accident report by the employer. The accident report, the medical record, states tripped over gas pipe. So you're saying, you're using some logic here, if it was under the deck and not visible, how would the claimant have known that day there was a gas pipe? Correct. Yes. It's like, it's a continuum of reality that we just have, that I just have to accept it. I don't know something's there unless I see it. I don't know that a tragedy is going to happen unless it actually happens, or something. Some event in history, I believe we have to rely on a reference point. So we have no picture? Pardon me? Do we have a picture? Yes, we have a picture. And what is the picture? The picture was taken somewhere between June 20th and July 15th of that year, of 2009, according to the testimony. The picture shows a front porch area with well-worn concrete steps, a gas pipe crossing over the second tread. Wait a minute, let's be fair about what the arbitrator said that picture shows. It shows the gas pipe up against the riser, and he contends, in fact it's in his opinion, I believe, it's in a position where he couldn't possibly trip on it. Isn't that what he said? Yes. Okay. And that goes to, which is a good, I understand his point, but that's not consistent with the act on a legal standpoint. That's where that opinion would be contrary to law, because I believe that frustrates the remedial purpose of the act that a person does not have to give a biomechanical analysis to say they're walking upstairs, these old, chunked-up concrete stairs with a gas pipe carrying a nursing bag, and they stumble. And then the arbitrator is requiring her to testify within a degree of certainty that I don't believe is contemplated by our act that how the biomechanics of how a front foot would hit a gas pipe on an 8-inch tread and how that motion would go forward or stumble. She was walking up the steps, and she stumbled. She believed it was the gas pipe that caused her to stumble. This is what's interesting, is you use the word trip and stumble, and they're not the same thing, are they? Well, I think I'm referring to stumble as a motion that's short of a fall. I think stumble is your better word. Yes. I mean, in this case, Boca, there are standards as to what tread depth is supposed to be, riser height, et cetera. And if you have a pipe that's up in the corner of the riser on top of the tread, you've reduced the tread depth, haven't you? Yes. And it's possible that you can stumble, your toe hits that, and you can have a fall. Yes. I believe stumble is a more appropriate word, but to be consistent with the medical records, the medical records during that time use both words, so I need to address both terms. But I believe stumble is more appropriate. As a matter of fact, the person walking up the stairs, they see a pipe that could cause them to stumble, to change their gait. And that analysis, especially for a traveling nurse carrying supplies going up these concrete stairs, I don't believe that is required by the Act. Let's focus on what the Commission actually said. Yes. To be fair, this is directly from the arbitrator's opinion. The arbitrator finds there is no accident. Not only was the petitioner unable to describe how she stumbled, there is a significant question as to whether the pipe she tripped on was even present at the time of her home health care visit. Moreover, the arbitrator notes the petitioner's photographic evidence of the pipe in question. The pipe is against the back of the steps, and the arbitrator questions how it was even possible to trip over a pipe completely against a back step. No date on the picture. Lastly, the form completed by the petitioner indicates no trip hazard. Accordingly, the arbitrator denies compensation. Now, in the face of the Stark's testimony and the picture, and against that, the only thing you have is the petitioner's own story. Because every medical record, that's a history recorded of what she told them. So you only have her testimony as to what happened versus the Stark's. I guess I'm back to my question. Why is it against the manifest way to the evidence, if the Stark's testimony is legitimate evidence? Yeah, if the Stark's testimony is legitimate evidence, then your answer is no, it would not be. That's the premise, is that their testimony is not legitimate. Your brief says they lied. Yes. Based on what? Based on the objective medical records. Her testimony that a gas pipe could not be known or visible to an invitee on their property, and so Ms. Hacker could not know that pipe existed. Then that issue is decided by the objective medical records, Carl's own accident report. Presumably they did an investigation. Well, let's assume you have a strong case that they lied. But again, not to throw another obstacle in front of you to jump over, but be aware of the very well-settled principle that it's the Commission's promise to judge the credibility and believability of the witnesses. So in whose eyes is the beholder of what is a lie? Isn't it the Commission's? Can we substitute our judgment and credibility for the Commission's? I think we know the answer to that, right? We're not supposed to. Not supposed to judge the credibility of the witness. The question is, the Commission did not make an attempt to reconcile the clearly plain, indisputable evidence that shows that their testimony is not credible. They just said we believe them because the wife testified consistently with the husband, even though she was not in the room. And you're contradicting that by saying the objective evidence refutes that. Yes, yes. That's it. In my brief, I believe that Ms. Hacker's testimony, her history is vague, and that's understood. There, Stark's testimony is very clear, very detailed. Ms. Hacker, if she's under oath and constrained with the truth, and if she doesn't really know how she stumbled exactly, you know, whether, that's the truth, and she has to go with it, whether it's vague and not the greatest. Had she been able to take more liberties with the truth, she probably could have came up with a better story. But she was constrained by the truth and the limitations of her memory. Mr. Miles, there was an exhibit at arbitration. That was the home health service file of Mr. Stark, right? Yes. And although your client indicated that she did not indicate that there was a safety hazard posed by these steps or the gas pipe, she indicated apparently that there was a note that was placed in the file indicating that there was a safety hazard. At least that's what's referenced in the arbitrator's decision. But the arbitrator indicates the petitioner did not offer this claim note into evidence. So my question is, was there a note? What did it say if it can be found in evidence? Yes. And the answer is, it's not contained in the record, but I will tell the answer because there was a civil case through subpoena. We never found a note. Okay. And that's a note. If there was ever a note, it was never manifested to me. And that's not in the record, but that answers your question. Okay, thank you. The data report, though, was relied on by the arbitrator as important. But again, that was what that laptop was. That's plugging in data. The same report was generated by other home health care nurses after the accident had been reported, investigated, and identified, and no changes. So I believe that shows that this was simply form work. I see my time is just about up. I appreciate the questions, and I was hoping for those. It is a tough standard, and I do understand that. But in this case, I think it is important. Work comp is all about injuries, obviously. And my experience has been that the arbitrators resolve conflict in testimony by focusing on the medical records. I believe that's how they make the decisions because medical records are so important. In this case, they seem to be either dismissed, ignored, or given very short shrift. Arbitration hearings sometimes form what I consider an outline. This busy docket, many hearings, forms an outline for the arbitrators to then refer to the medical records. In this case, the testimony, very clear on one side, I'm not sure, I can't remember on the other, was it. The records were not referenced. That, to me, is a very big concern. The clear testimony is by the starch, right? Yes. You just alluded to the fact that the defendants were probably in a civil suit. They were at one time. And also their clients at Carl Foundation, are they not? Yes. Is there some question about their objectivity? I believe there is no question about their objectivity. They were biased. The medical records were objective. Is there any medical record at all other than Dr. Groten's of June the 14th that specifically mentions her having tripped on a pipe? Yes. Or is he the only reference to a pipe? In the medical records? Yes. Before July 10th, and I see my time is up, but let me answer this question quickly. Before July 10th, there's the stairs, there's the pipe. But in the records, that's it. Then the accident report of July 1st mentions the pipe. Yeah, then other records following that July 10th do mention the pipe. I thank you for your time. I do ask that you reverse. May it please the court. Counselor, my name is Eric Shabanek, and I represent the respondents at Carl Foundation. An honest review of this record shows that there are some inconsistencies and irreconcilable differences between the testimony of the Starks, the testimony of the petitioner, and some of the physical evidence. I had a lot of topics I wanted to discuss today, but through your poignant questions, most of those topics were actually discussed. Well, could I ask you a simple question, a couple of poignant questions? The Starks testified that the deck over the steps was never removed until July the 10th. Is that not true? If you actually look at the testimony of Mr. Starks, he says he believes it was around July the 10th, but he wasn't sure. He's basing that off of a cardiac procedure at Carl in the beginning of June or end of May, and he was on restrictions where he wouldn't be allowed to do that for five to six weeks. So he's not certain of the specifics. I ask you the question that your opponent raises. How was it that she knew on July the 1st of 2009 and also on June the 14th of 2009 that there was even a gas pipe across those stairs if there was a deck over them? How would she define that? How would she know that? I don't know, Your Honor. So that's what he raises as to the reason why we should find this is against the manifest weight of the evidence because the arbitrator obviously ignored the fact that she would have had to have seen a gas pipe to report a gas pipe. She would have had to have seen a gas pipe in order to put a gas pipe on the accident report, and if, as the starks say, this thing was covered by a deck until July the 10th, she couldn't possibly have seen it. Your Honor, that's one of the irreconcilable differences that is in this case. I don't know how to explain that. I don't know if there's a way to explain that. Perhaps she saw it. Perhaps it stuck out the side of the deck. I don't know. If that were the only, or as the circuit court judge said, if that were the only piece of evidence that supported our position, then I would agree that our case is rather weak, but it's not the only point. As you had just previously discussed, there are numerous medical records around the time of the accident where the petitioner does not reference this pipe, and her story as to how she tripped and fell, stumbled, changed. And then the most important piece of evidence for us is the fact that on the date of the accident she was filling out that form. That was her job that day. It includes this section. Risk of falling? Yes, which she didn't fill out. She didn't say anything about the pipe at that time? No, she did not, and she didn't say anything about a fall hazard, which... If she stumbled herself, one would think she was listed as a fall hazard, right? I agree, Your Honor. I agree. The arbitrator had the opportunity to look at, or the commission had the opportunity to look at the live testimony from both accounts. He had the opportunity to look at the demeanor and the reasonableness of their testimony in regards to the evidence that was in front of him. In light of all that, we would ask, and in light of the standard of review, which is one of manifest weight, I think it's clear that an opposite conclusion is not readily apparent. We would ask that you affirm the decision. Thank you. Thank you. You may reply. Thank you. Counsel, let me ask you the question I just asked him. She's tasked with assessing Mr. Starks' risk of falling. That's part of her professional responsibility. She's at the house. She stumbles on a pipe. She stumbles on the pipe that obviously Mr. Starks is going to be in jeopardy of falling at any given point in time. If this happened the way she said it, why didn't she make any reference whatsoever to this serious hazard of Mr. Starks' fall? I can only speculate. We're off in the realm of speculation again. Okay. Okay. I mean, these computer, the computer record is what is generated by that laptop computer. They're sitting there taking blood pressure, taking assessments, vitals, putting those into the computer. There is a point in that data, in that place where it says other discussion with the patient. There's very limited places. The question is, in particular, is inside the home. And the steps are technically outside the home. I don't know why that is. You can see the concern. She says, all right, Hal, I'm here to help you. She falls in the house but doesn't make any mention of this hazard. Yes. Is maybe the explanation that this handwritten note that is no longer in the file was written to reference this hazard? Possibly. I think that that handwritten note is a call out to other nurses, watch out when you walk in. And I think the note is more a heads up to the other visiting nurses. She wasn't the only nurse to visit Mr. Starks. There were others. And that is what I believe the context of her testimony. There's a lot of fill in the gaps in this case, isn't there? Yes, because it's a stumble. And it's a stumble that was reported ten days afterwards. It was accepted. It was the issue for the next two years was whether this stumble aggravated or accelerated the pre-existing condition to the need that she required surgery. So, yeah, there is a lot of speculation on this stumble going up two years later when all the doctors have provided an opinion she suffered some kind of injury. Carl and CCMSI investigated the claim and suddenly the Starks come in two years later saying, hey, this didn't happen. So, yeah, that sets the stage for a lot of speculation. When that question, the issue of is somebody going to believe me that I actually stumbled or not, wasn't raised until the very end. Understood, that's part of the inherent risk of arbitration hearings, but that at least provides some basis for the speculation. And again, Mr. Starks testified that the death would not have been removed no earlier than July 10th because he would have been at home. Going to the database, to the nurse's sheet, I do believe, I don't know why nurses didn't put this in there, but it is plain and indisputable that other nurses visited that home between June 4th and July 10th, and that was never mentioned. Superimpose that fact with the fact that Ms. Hacker could not have known that there was a pipe in these concrete steps in existence and that the Stackers were wrong on that point. That's the best I can explain. Wait a minute, how does the fact that none of the other visiting nurses documented that help you? Doesn't that work against you? Couldn't you make the argument, hey, if nobody put it in the report, nobody saw it either, because it wasn't there? Unless, but that doesn't, but then you're constrained by the question, how would she know that a gas pipe is there when nobody knows it's there? Well, there's slats in between, I'm not going to speculate. The deck, I mean, you know, there's a lot of unanswered questions. But the fact that other nurses never noted this protrusion, it's dangerous. I'm not sure that actually helps you. Are you saying the notations to be made in an assessment, risk assessment, for a client are primarily inside the home? That's because he's homebound. Not why, but I mean, is it a form that says risk inside the home? Yes, it says inside the home, yes. Oh, well, then that answers the question. It does, but also, there's a common sense. There's a common sense component, isn't there? It would be nice if it was there, but I don't know why it wasn't. Again, going back to the stumble, she could have stumbled on the wooden steps going up the wooden deck if that existed. This was a stumble, she was carrying her bag, I believe. Your time is up. Okay, thank you very much. Thank you. Thank you, counsel, both, for your arguments. This matter will be taken under advisement. This position shall issue.